ORIGINAL

LEONARDO M. RAPADAS
United States Attorney
MARIVIC P. DAVID
Assistant U.S. Attorney
Sirena Plaza Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for United States of America

FILED
DISTRICT COURT OF GUAM
MAY 18 2005
MARY L.M. MORAN
CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SEAN MICHAEL COLE a/k/a<br>SHAWN COLE,<br>GILBERT JOSE MATTA, and<br>JESSICA ROSE MESA,<br><br>Defendants. | MAGISTRATE CASE NO. 05-00028<br><br>**COMPLAINT**<br><br>**ATTEMPTED POSSESSION OF METHAMPHETAMINE HYDROCHLORIDE WITH INTENT TO DISTRIBUTE**<br>[21 U.S.C. §§ 841(a)(1) and 846]<br>(Count I)<br><br>**CONSPIRACY TO DISTRIBUTE METHAMPHETAMINE HYDROCHLORIDE**<br>[21 U.S.C. §§ 841(a)(1) and 846]<br>(Count II) |

THE UNDERSIGNED COMPLAINANT CHARGES UPON INFORMATION AND BELIEF THAT:

## COUNT I - ATTEMPTED POSSESSION OF METHAMPHETAMINE HYDROCHLORIDE WITH INTENT TO DISTRIBUTE

On or about May 17, 2005, in the District of Guam, the defendant, SEAN MICHAEL COLE a/k/a SHAWN COLE, did unlawfully and knowingly attempt to possess with intent to distribute over 100 grams of methamphetamine hydrochloride, a schedule II controlled substance, in violation of Title 21, United States Code, §§ 841(a)(1) and 846.

//

//

## COUNT II - CONSPIRACY TO DISTRIBUTE METHAMPHETAMINE HYDROCHLORIDE

On or about May 17, 2005, in the District of Guam, the defendants, SEAN MICHAEL COLE a/k/a SHAWN COLE, GILBERT JOSE MATTA, and JESSICA ROSE MESA, and other known and unknown co-conspirators, did unlawfully, intentionally, and knowingly combine, conspire, confederate and agree together and with others, to distribute over 100 grams of methamphetamine hydrochloride, a schedule II controlled substance, in violation of Title 21, United States Code, §§ 841(a)(1) and 846.

COMPLAINANT FURTHER STATES:

I, John S.A. Duenas, being a Special Agent with the U.S. Immigration and Customs Enforcement (BICE) of the Department of Homeland Security, and acting in my official capacity, set forth the following facts:

1. I am a Special Agent with BICE (formerly the U.S. Customs Service), and have been so employed for approximately five (5) years. Prior to my employment with said federal agency, I was a Police Officer with the Guam Police Department for 12 years.

2. I know from my training and experience that it is common practice for large-scale methamphetamine traffickers to travel to their purchase and distribution areas to facilitate their trafficking. After purchasing methamphetamine, these methamphetamine traffickers will transport or cause to be transported methamphetamine. The methods of transportation include, but are not limited to, commercial airlines, private automobiles, government and contract mail services. I am also aware that a common method used by drug traffickers to smuggle controlled substance so as to avoid detection is by secreting the drugs in an internal body cavity. For males, such internal body cavity carries would consist of swallowing sealed balloons or condoms containing controlled substance or, alternatively, inserting the same within their rectum. In addition to the foregoing methods, females have a third method of internal body cavity carry in which the controlled substance, similarly packaged, is inserted in their vagina. For a rectal carry,

2

because the balloon or condom is inserted through the anal opening, traffickers typically use lubricants to ease the passage.

3. During April 2005 the Guam Resident Office of ICE received information from law enforcement officers of the U.S. Customs and Border Protection in Honolulu that a resident of Guam, Douglas Guerrero, was arrested in Honolulu on about April 26, 2005, for having in his possession approximately 72.5 grams of suspected methamphetamine. Guerrero was en route to travel to Guam when he was arrested in Hawaii. The Honolulu officers advised that Guerrero's airline ticket had been paid for by one John Peralta. The Guam ICE office reviewed Western Union money transfer transactions conducted by Peralta to other individuals in the mainland, and received information that Peralta wired at least $7,000 during February 2005-March 2005 to Gerardo E. Gonzales, Jr., and Mia M. Rojas.

4. On May 16, 2005, at about 5:33 p.m., the Guam Customs and Quarantine Agency Contraband Enforcement Team (CET), and the Guam Police Department Violent Street Crimes Task Force (VSCTF) conducted an operation at the Antonio Borja Wonpat International Air Terminal targeting arriving passengers from Honolulu on board Continental Airlines Flight #001. Customs Officer Ricky Mendiola, Customs Officer Franklin Gutierrez and drug detector dog "Eron" participated in the operation. "Eron" has been trained to recognize the distinctive odor of controlled substances to include methamphetamine. "Eron" sniffed arriving passengers, hand carry bags, and luggage. During the inspection, "Eron" alerted to a male and female passenger, by exhibiting a change in behavior consistent with the training in the detection of the odor of controlled substances. An alert is a signal from the drug detector dog of suspected narcotics. The passengers were later identified as Gerardo Eloy Gonzalez, Jr. and Mia Mary Rojas.

5. Customs Officer Derrick Guerrero inspected Gonzalez and Officer Nadine Concepcion inspected Rojas. Lt. Annette Shimizu and Officer Concepcion escorted Rojas to the search room and conducted a strip search, which yielded a negative finding for contraband. Rojas was advised of her constitutional rights, which she waived, and stated that she was willing to

3

answer questions. Customs Officer I Craig Camacho and Customs Officer II Franklin Taitague advised Rojas that there was reason to believe that Rojas had methamphetamine concealed in her, and asked Rojas to submit to an x-ray examination. After Rojas consented to an x-ray examination, she was escorted to the search room where she removed from her person one condom containing approximately 162.5 grams gross weight of a white crystal substance. Officer Franklin Taitague conducted a field test of the substance using a Marquis Reagent #902 kit which resulted in a presumptive positive for the presence of amphetamines. Rojas stated that she and Gonzalez just wanted to make fast cash. Rojas and Gonzalez were expecting to check in to the Hotel Mai Ana and then call John Timothy Peralta to arrange for delivery of the crystal substance.

6. Gonzalez was advised of his constitutional rights, which he waived, and stated that he and Rojas intended to deliver the crystal methamphetamine to John Timothy Peralta. Gonzalez stated that Peralta paid for a portion of the airfare for the trip to Guam. Gonzalez stated that the crystal methamphetamine is from a friend of his named William Martinez who travels to Tijuana, Mexico and smuggles the crystal methamphetamine through the U.S. border. Gonzalez stated that he and Rojas had previously traveled to Guam in March 2005, when they were escorting another individual who brought methamphetamine that was delivered to Peralta.

7. Rojas and Gonzalez further explained that approximately a year ago, Annette Gonzalez, SEAN MICHAEL COLE a/k/a SHAWN COLE, Lisa Rodriguez, Deanna Morales, Douglas Guerrero, John Peralta and others all agreed to smuggle crystal methamphetamine between Tijuana, Mexico, California, and Guam. According to Rojas, Peralta was the main distributor in Guam for this organization. Rojas stated that COLE, Guerrero, Morales, Rodriguez and others have carried crystal methamphetamine secreted in their body cavities. According to Rojas, COLE, Guerrero, and Rodriguez began to smuggle their own crystal methamphetamine, however, would check each other when one of them were out of crystal methamphetamine.

//

4

8. On May 17, 2005, a controlled delivery was conducted where Rojas and Gonzalez were placed at the Hotel Mai Ana, Room 208. Rojas and Gonzalez were given a zip lock bag containing "sham," or a counterfeit substance. Gonzales placed a monitored and recorded telephone call to SEAN MICHAEL COLE a/k/a SHAWN COLE, and informed him that he and Rojas had arrived in Guam. COLE told Gonzalez that he was at the airport waiting for them. COLE told Gonzalez that he would come by Hotel Mai Ana.

9. On May 17, 2005, at about 8:59 p.m., COLE arrived at the Hotel Mai Ana, Room 208, with GILBERT JOSE MATTA and JESSICA ROSE MESA. COLE spoke with Gonzalez and Rojas and told them about two couriers who were internally carrying crystal methamphetamine but were arrested in Guam on Saturday. COLE told Gonzalez and Rojas that he will sell the crystal methamphetamine and return in a day or so with money for Gonzalez and Rojas. COLE told them that MATTA and MESA were going to assist COLE in distributing the crystal methamphetamine. COLE was arrested after taking possession of the sham and as he was preparing to leave the hotel room.

//
//
//
//
//
//
//
//
//
//
//
//

5

10. Based on the foregoing, I have probable cause to believe that SEAN MICHAEL COLE a/k/a SHAWN COLE has committed the offenses of attempted possession of methamphetamine hydrochloride with intent to distribute in violation of Title 21, United States Code, §§ 841(a)(1) and 846, and that COLE, GILBERT JOSE MATTA, and JESSICA ROSE MESA have committed the offense of conspiracy to distribute methamphetamine hydrochloride in violation of Title 21, United States Code, §§ 841(a)(1) and 846.

DATED this 18 day of May 2005.

JOHN S.A. DUENAS
Senior Special Agent
U.S. Immigration & Customs Enforcement
Department of Homeland Security

SUBSCRIBED AND SWORN TO before me on this 18th day of May 2005.

JOAQUIN V.E. MANIBUSAN, JR.
Magistrate Judge
District Court of Guam

6